DOWNEY BRAND LLP
JAMIE P. DREHER (Bar No. 209380)
jdreher@downeybrand.com
SEAN J. FILIPPINI (Bar No. 232380)
sfilippini@downeybrand.com
CHRISTOPHER M. KOLKEY (Bar No. 300206)
ckolkey@downeybrand.com
621 Capitol Mall, 18th Floor
Sacramento, California 95814
Telephone:     916.444.1000
Facsimile:      916.444.2100

Attorneys for ANVIL POWER, INC., ANVIL
EQUIPMENT COMPANY LP, ANVIL
BUILDERS, ANVIL HOLDINGS, INC., ANVIL
GROUP, LLC, ALAN GUY, and RICHARD J.
LEIDER

UNITED STATES BANKRUPTCY COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| In re:<br><br>KINGSBOROUGH ATLAS TREE SURGERY, INC.,<br><br>        Debtor. | Case No. 25-10088 WJL<br><br>Chapter 11<br><br>AP No. 25-01008 |
| KINGSBOROUGH ATLAS TREE SURGERY, INC.,<br><br>        Plaintiff,<br><br>        v.<br><br>ANVIL POWER, INC., a California corporation, ANVIL EQUIPMENT COMPANY LP, a California limited partnership, ANVIL BUILDERS, a California corporation, ANVIL HOLDINGS, INC., a California corporation, ANVIL GROUP, LLC, a California limited liability company; ALAN GUY, an individual; RICHARD J. LEIDER, an individual, and DOES 1-100,<br><br>        Defendants. | **DEFENDANTS ANVIL POWER, INC., ANVIL EQUIPMENT COMPANY LP, ANVIL BUILDERS, ANVIL HOLDINGS, INC., ANVIL GROUP, LLC, ALAN GUY, AND RICHARD J. LEIDER MOTION TO DISMISS FIRST AMENDED COMPLAINT PURSUANT TO FEDERAL RULE OF CIVIL PROCEDURE 12(b)(6) AND MOTION TO STRIKE PORTIONS OF FIRST AMENDED COMPLAINT PURSUANT TO FEDERAL RULE OF CIVIL PROCEDURE 12(f); MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT THEREOF**<br><br>Date:  August 13, 2025<br>Time: 10:30 am<br>Dept.: 220<br>Judge: Hon. William J. Lafferty |

MOTION TO DISMISS/STRIKE FIRST AMENDED COMPLAINT

# TABLE OF CONTENTS

**Page**

I. INTRODUCTION ...................................................................................................8

II. STATEMENT OF FACTS .....................................................................................9

    A.   The Initial Complaint and Subsequent Amendment. ..................................9

    B.   The First Amended Complaint's Allegations. ...........................................9

    C.   Plaintiffs Remove the First Amended Complaint to this Court. ...............11

III. STANDARD FOR MOTION TO DISMISS .........................................................11

IV. STATEMENT OF ISSUES ..................................................................................12

V. LEGAL ARGUMENT ..........................................................................................13

    A.   The Second Claim Fails to State a Claim for Breach of the Implied Covenant. ...............................................................................................13

    B.   The Third Cause of Action Fails to State a Claim for "Unfair Competition" ..........14

    C.   The Fourth Cause of Action Fails to State a Claim for "Conversion". ....................16

    D.   The Fifth Claim Fails to State a Claim for "Fraud (Intentional Misrepresentation)". ..................................................................................17

        1.   The Intentional Misrepresentation Claim Is Not Pleaded with Particularity. ...................................................................................17

        2.   The Economic Loss Rule Bars the Intentional Misrepresentation Claim. ...........................................................................................18

    E.   The Sixth Cause of Action Fails to State a Claim for "Negligent Misrepresentation". ............................................................................21

        1.   The Negligent Misrepresentation Claim Is Not Pleaded with Particularity. ...................................................................................21

        2.   The Economic Loss Rule Bars the Negligent Misrepresentation Claim. ...........................................................................................21

        3.   There Is No Cause of Action for "Negligent" False Promise. ...................22

    F.   The Seventh Cause of Action Fails to State a Claim for "Conspiracy to Defraud". ...............................................................................................23

        1.   The Cause of Action Fails Because the Underlying Fraud Claim Fails. ...............................................................................................23

        2.   The Elements for Civil Conspiracy Are Not Sufficiently Pleaded. .............23

DOWNEY BRAND LLP

MOTION TO DISMISS/STRIKE FIRST AMENDED COMPLAINT

G.    The Tenth Cause of Action Fails to State a Claim for "Injunctive Relief"..............24

H.    Plaintiffs Have Failed to State a Claim Against the Doe Defendants. .....................24

I.    The Court Should Strike Plaintiffs' Request for Punitive Damages. .......................25

VI. LEAVE TO AMEND SHOULD BE DENIED .........................................................................26

VII. CONCLUSION.....................................................................................................................27

Downey Brand LLP

MOTION TO DISMISS/STRIKE FIRST AMENDED COMPLAINT

## **TABLE OF AUTHORITIES**

**Page(s)**

**Cases**

*Aas v. Superior Court,*
  24 Cal.4th 627 (2000) ........................................................................................ 18

*Applied Equip. Corp. v. Litton Saudi Arabia Ltd.,*
  7 Cal.4th 503 (1994) .......................................................................................... 23

*Ashcroft v. Iqbal,*
  556 U.S. 662 (2009) ........................................................................................... 12

*Astrium S.A.S. v. TRW, Inc.,*
  197 F.App'x 575 (9th Cir. 2006) ....................................................................... 22

*Balistreri v. Pacifica Police Dep't,*
  901 F.2d 696 (9th Cir. 1990) ............................................................................. 11

*Bell Atl. Corp. v. Twombly,*
  550 U.S. 544 (2007) ........................................................................................... 12

*Brockman v. Cnty. of San Diego,*
  No. 11-CV-05120GPC-BLM, 2022 WL 15524598 (S.D. Cal. Oct. 27, 2022) ...................... 25

*Careau & Co. v. Security Pacific Business Credit, Inc.,*
  222 Cal.App.3d 1371 (1990) .............................................................................. 13

*Chapman v. Pier 1 Imports, Inc.,*
  631 F.3d 939 (9th Cir. 2011) ............................................................................. 12

*Cook, Perkiss Liehe v. N. Cal. Collection Service,*
  911 F.2d 242 (9th Cir. 1990) ............................................................................. 26

*Cooper v. Pickett,*
  137 F.3d 616 (9th Cir. 1997) ............................................................................. 17

*Crystal Springs Upload Sch. v. Fieldturf USA, Inc.,*
  219 F.Supp.3d 962 (N.D. Cal. 2016) ................................................................. 21

*Epstein v. Wash. Energy Co.,*
  83 F.3d 1136 (9th Cir. 1996) ............................................................................. 12

*In re Facebook, Inc. Internet Tracking Litigation,*
  956 F.3d 589 (9th Cir. 2020) ............................................................................. 13

2
MOTION TO DISMISS/STRIKE FIRST AMENDED COMPLAINT

DOWNEY BRAND LLP

*Fayer v. Vaughn*,
    649 F.3d 1061 (9th Cir. 2011) .................................................................. 12

*Fifty Associates v. Prudential Ins. Co. of America*,
    446 F.2d 1187 (9th Cir. 1970) .................................................................. 24

*Foster Poultry Farms v. Alkar-Rapidpal-MP Equipment, Inc.*,
    868 F.Supp.2d 983 (E.D. Cal. 2012) ......................................................... 18

*Garcia v. Bryant*,
    No. CV-F-11-1566-LJO, 2011 WL 5241177 (E.D. Cal. Oct. 31, 2011) ......................... 24, 25

*Glen Holly Entertainment, Inc. v. Tektronix, Inc.*,
    100 F.Supp.2d 1086 (C.D. Cal. 1999) .................................................... 17, 21

*Guz v. Bechtel Nat. Inc.*,
    24 Cal.4th 317 (2000) .......................................................................... 13

*Guzman v. Dorsey*,
    No. 19-cv-03757-HSG, 2021 WL 84476 (N.D. Cal. Jan. 11, 2021) .......................... 24

*Henrikson v. Turbomeca*,
    No. CV.S 06 1563, 2006 WL 3929541 (E.D. Cal. 2006) .................................... 26

*Kearns v. Ford Motor Co.*,
    567 F.3d 1120 (9th Cir. 2009) .................................................................. 14

*Khory v. Maly's of California, Inc.*
    14 Cal.App.4th 612 (1993) ...................................................................... 14

*Lavine v. Jessup*,
    161 Cal.App.2d 59 (1958) ...................................................................... 26

*Lee v. Plummer*,
    No. C-0402636 VRW, 2005 WL 91380 (N.D. Cal. Jan. 17, 20025) ......................... 25

*M.J. Brock & Sons, Inc. v. City of Davis*,
    401 F.Supp. 354 (N.D. Cal. 1975) ......................................................... 24, 25

*Mangindin v. Washington Mut. Bank*,
    637 F.Supp.2d 700 (N.D. Cal. 2009) ......................................................... 24

*Meineke Franchisor SPV LLC v. CJGL, Inc.*,
    No. 2:23-cv-00374, 2024 WL 4004998 (C.D. Cal. July 24, 2024) .......................... 22

*N. Star Int'l v. Ariz. Corp. Comm'n*,
    720 F.2d 578 (9th Cir. 1983) .................................................................. 11

*Nardico v. J P Morgan Chase and Co.*,
    No. C 12-4891 PJH, 2013 WL 144096 (N.D. Cal. Jan. 11, 2013) .......................... 24

MOTION TO DISMISS/STRIKE FIRST AMENDED COMPLAINT

*Neubronner v. Milken,*
    6 F.3d 666 (9th Cir. 1993) ................................................................. 17

*Nuvo Research Inc. v. McGrath,*
    No. C 11-4006 SBA, 2012 WL 1965870, at *6 (N.D. Cal. May 31, 2012). .................... 14, 15

*Quereshi v. Countrywide Home Loans, Inc.*, No. C09-4198 SBA, 2010 WL 841669
    (N.D. Cal. Mar. 10, 2010) ................................................................. 15

*Rains v. Criterion Sys.*,
    80 F.3d 339 (9th Cir. 1996) ................................................................. 22

*Rattagan v. Uber Technologies, Inc.*,
    17 Cal.5th 1 (2024) ................................................................. 18, 21

*Santos v. Potter*, No. C-06-2948-VRW, 2007 WL 926493 (N.D. Cal. Mar. 26,
    2007) ................................................................. 26

*Schertzer v. Bank of America, NA,*
    109 F.4th 1200 (9th Cir. 2024) ................................................................. 13

*Schwarz v. United States,*
    234 F.3d 428 (9th Cir. 2000) ................................................................. 12

*Security First Nat. Trust & Sav. Bank v. Loftus*
    129 Cal.App. 650 (1933) ................................................................. 20

*Sheen v. Wells Fargo Bank, N.A.*,
    12 Cal.5th 905 (2002) ................................................................. 18, 21, 22

*Shroyer v. New Cingular Wireless Servs., Inc.*,
    622 F.3d 1035 (9th Cir. 2010) ................................................................. 15

*Stop Loss Ins. Brokers, Inc. v. Brown & Toland Med. Grp.*
    143 Cal.App.4th 1036 (2006) ................................................................. 16

*Tarmann v. State Farm Mut. Auto. Ins. Co.*,
    2 Cal.App.4th 153 (1991) ................................................................. 23

*Total Recall Technologies v. Luckey*,
    731 Fed.Appx. 706 (9th Cir. 2018) ................................................................. 13

*Trans World International, Inc. v. Weiss/Watson, Inc.*,
    205 F.3d 1352 (9th Cir. 2024) ................................................................. 22

*U.S. Concord, Inc. v. Harris Graphics Corp.*,
    757 F. Supp. 1053 (N.D. Cal. 1991) ................................................................. 21

DOWNEY BRAND LLP

*United States, for the Use of Integrated Energy, LLC v. Siemens Gov't Techs., Inc.*,
No. SACV 15-01534 JVS (DFMx), 2016 WL 11743176 (C.D. Cal. June 13, 2016) ............................................................................................................... 14

*Vestis, LLC v. Caramel Sales, Ltd.*,
No. SACV182257DOCKESX, 2019 WL 3312212 (C.D. Cal. Apr. 30, 2019) ..................... 14

*Voris v. Lampert*,
7 Cal.5th 1141 (2019) ........................................................................................ 16

*Wells v. Bd of Trustees of the Cal. State Univ.*,
393 F. Supp. 2d 990 (N.D. Cal. 2005) .................................................................. 26

*Willis v. City of L.A.*,
57 Fed.Appx. 283 (9th Cir. 2002) ........................................................................ 23

**Statutes**

28 U.S.C. § 1452 ............................................................................................. 11

Cal. Bus. & Prof. Code sections 17200, *et seq.* ..................................... 8, 9, 11, 14

Cal. Civ. Code, § 3294 ..................................................................................... 26

**Other Authorities**

CACI 1900 ...................................................................................................... 17

CACI 1902 ...................................................................................................... 22

CACI 1903 ...................................................................................................... 21

Federal Rule of Civil Procedure 9(b) ................................................. 14, 17, 18, 21

Federal Rule of Civil Procedure 12(b)(6) .............................................. 7, 11, 15

Federal Rule of Civil Procedure 12(f) ......................................................... 7, 12

DOWNEY BRAND LLP

MOTION TO DISMISS/STRIKE FIRST AMENDED COMPLAINT

## MOTION

Defendants Anvil Power, Inc., Anvil Equipment Company LP, Anvil Builders, Anvil Holdings, Inc., Anvil Group, LLC, Alan Guy, and Richard J. Leider (collectively, "Defendants") hereby move the Court for an order granting Defendants' motion to: (1) dismiss plaintiffs Kingsborough Atlas Tree Surgery, Inc., Richard Kingsborough, and Cindy Kingsborough's (collectively, "Plaintiffs") First Amended Complaint's ("FAC") second, third, fourth, fifth, sixth, seventh, and tenth causes of actions with prejudice, as well as the 100 Doe Defendants with prejudice, pursuant to Federal Rule of Civil Procedure 12(b)(6); and (2) strike the FAC's claim for punitive damages, pursuant to Federal Rule of Civil Procedure 12(f) ("Motion").

This Motion is made on the ground that the FAC's second, third, fourth, fifth, sixth, seventh, and tenth causes of action fail to state claims upon which relief can be granted under Federal Rule of Civil Procedure 12(b)(6), Does 1 through 100 are sufficiently pleaded and otherwise improperly named as defendants in federal court, and no legal basis exists for the insufficiently pleaded claim for punitive damages in the FAC.

The Motion is based upon the Notice of Hearing, this Motion and the Memorandum of Points and Authorities, and the Declaration of Christopher M. Kolkey, filed concurrently herewith, all pleadings and papers on file in this action, and upon such other matters as may be presented to the Court at the time of the hearing.


DATED: June 30, 2025              DOWNEY BRAND LLP


                                  By: _____/s/ Sean J. Filippini_____
                                         SEAN J. FILIPPINI
                                  Attorneys for ANVIL POWER, INC., ANVIL
                                  EQUIPMENT COMPANY LP, ANVIL
                                  BUILDERS, ANVIL HOLDINGS, INC., ANVIL
                                  GROUP, LLC, ALAN GUY, and RICHARD J.
                                  LEIDER

## MEMORANDUM OF POINTS AND AUTHORITIES

Defendants Anvil Power, Inc. ("Anvil Power"), Anvil Equipment Company LP ("Anvil Equipment"), Anvil Builders ("Anvil Builders"), Anvil Holdings, Inc. ("Anvil Holdings"), Anvil Group, LLC ("Anvil Group"), Alan Guy, and Richard J. Leider (collectively, "Defendants") hereby move to dismiss the First Amended Complaint's second, third, fourth, fifth, sixth, seventh, and tenth causes of action in their entirety and without leave to amend, as well Does 1-100. They further move to strike the FAC's claim for punitive damages.

## I. INTRODUCTION

This lawsuit centers around a contractual relationship between Plaintiff Kingsborough Atlas Tree Surgery, Inc. ("KBA") and its founders, plaintiffs Richard Kingsborough and Cindy Kingsborough (the "Kingsboroughs"; collectively, "Plaintiffs"), on the one hand, and Anvil Power, and Anvil Equipment, on the other hand. Under the contract entitled "Asset Purchase Agreement" ("Agreement"), assets of KBA for its forest and vegetation management business were acquired. This entailed the acquisition of machinery, tools, vehicles, equipment, intellectual property, and third-party agreements, and the hiring of most all KBA's employees.

Dissatisfied with Anvil Power and Anvil Equipment's performance under the Agreement, Plaintiffs sued for breach of the Agreement. In efforts to add teeth to what is a garden variety contract dispute, Plaintiffs expanded their lawsuit into one with ten causes of action, packed with tort claims for, *inter alia*, fraud and conversion. Plaintiffs also swept other defendants into this litigation who are not even parties to the Agreement and whose involvement is not even parceled out in the complaint: Anvil Holdings, Anvil Group, Alan Guy, and Richard Leider.

The First Amended Complaint's ("FAC") second, third, fourth, fifth, sixth, seventh, and tenth causes of actions should be dismissed, which suffer a litany of pleading defects. While these defects will be articulated in more detail below, the most serious of those plaguing the FAC concern the tort and statutory causes of action (specifically, for intentional and negligent misrepresentation, violation of Business & Professions Code section 17200, and conversion), which are merely repackaged contract claims. Indeed, the alleged wrongdoing—involving the acquisition of assets and termination of KBA's employees—involves obligations expressly

MOTION TO DISMISS/STRIKE FIRST AMENDED COMPLAINT

DOWNEY BRAND LLP

1  contemplated by the Agreement, and it is therefore improper to repackage such conduct as torts.

2  There are also causes of action that are categorically impermissible; the second cause of action for

3  "Breach of Implied Covenant of Good Faith and Fair Dealing" is impermissibly duplicative of the

4  breach of contract claim, and the "Injunctive Relief" fails because injunctive relief is a remedy,

5  not a cause of action. Finally, the FAC pleads 100 Doe Defendants, and the Ninth Circuit does not

6  allow "Doe Defendants" to be named, let alone where no specificity about them exists.

7        Defendants accordingly request that the Court dismiss the FAC's second, third, fourth,

8  fifth, sixth, seventh, and tenth causes of actions with prejudice, as well as the 100 Doe Defendants.

9  Furter, Defendants request that the Court strike the FAC's request for punitive damages.

10  ## II. <u>STATEMENT OF FACTS</u>

11  **A.      <u>The Initial Complaint and Subsequent Amendment.</u>**

12        On January 29, 2025, Plaintiffs filed a Complaint against all Defendants, except Richard

13  Leider, in Sonoma County Superior Court, entitled *Kingsborough Atlas Tree Surgery, Inc. v. Anvil*

14  *Power, Inc.*, Case No. 25CV00751. (ECF No. 1 [Exhibit 1].) The Complaint alleged nine claims.

15        On March 27, 2025, Defendants sent Plaintiffs a meet-and-confer letter about an

16  anticipated Demurrer to the Complaint, identifying various deficiencies. (Declaration of

17  Christopher M. Kolkey, ¶ 2, Ex. A.) In response to this letter and a subsequent telephonic

18  discussion, Plaintiffs decided to amend their complaint. (*Id.*, ¶ 3.)

19  **B.      <u>The First Amended Complaint's Allegations.</u>**

20        On May 13, 2025, Plaintiffs filed their First Amended Complaint ("FAC") in Sonoma

21  County Superior Court. The FAC pleaded all the same nine causes of action. The FAC failed to

22  address nearly all the deficiencies that Defendants had previously identified. The most significant

23  changes to the FAC merely entailed attaching contract documents, adding a new cause of action

24  (for "Conspiracy to Defraud"), adding new defendant (Richard Leider), and reordering the causes

25  of action. (ECF No. 1 [Exhibit 2].)

26        The FAC pleads the following ten causes of action: (1) Breach of Contract; (2) Breach of

27  the Implied Covenant of Good Faith and Fair Dealing; (3) Unfair Competition (Bus. & Prof. Code,

28  § 17200); (4) Conversion; (5) Fraud (Intentional Misrepresentation); (6) Negligent

MOTION TO DISMISS/STRIKE FIRST AMENDED COMPLAINT

1  Misrepresentation; (7) Conspiracy to Defraud; (8) Accounting; (9) Declaratory Relief; and (10)

2  Injunctive Relief.  (ECF No. 1 [Exhibit 2].)

3       In the FAC, Plaintiffs allege that the Kingsboroughs founded KBA, which specialized in

4  large scale forest and vegetation management projects.  (ECF No. 1 [Exhibit 2, at ¶ 2].)

5       Plaintiffs allege that Anvil Power and Anvil Equipment entered into an agreement with

6  them, entitled "Asset Purchase Agreement" ("Agreement") to purchase KBA's assets, including

7  third-party contracts, in exchange for a cash payment and percentage of profits.  (ECF No. 1

8  [Exhibit 2, ¶ 6, Exhibit A [Asset Purchase Agreement]].)  Paragraph 1.01 of the Agreement,

9  specifically provided for the sale of: (1) agreements with customers; (2) tradenames, trademarks,

10  websites, and business telephone numbers; (3) goodwill and going concern value; and (4)

11  insurance policies.  (*Id.* [Exhibit A, ¶ 1.01].)  It further had provisions governing the sale of

12  KBA's equipment, including "machinery, tools, vehicles, excluding personal vehicles, office

13  equipment, and other tangible personal property…."  (*Id.*)  Paragraph 5.02 of the Agreement

14  further provided that, "[u]pon the Closing, Anvil Power and/or an Affiliate of Anvil Power shall

15  offer employment to substantially all of Seller's employees for substantially the same pay, benefits

16  and positions."  (*Id.*, ¶ 5.02.)  It further provided that "[a]fter the Closing, neither Anvil Power nor

17  any Affiliate shall terminate 50 or more employees or change their compensation, benefits…level

18  of seniority, working conditions or job responsibilities within thirty (30) days after Closing."  (*Id.*)

19       The Agreement has an integration clause in Paragraph 8.05, providing: "This Agreement

20  and the other Transaction Documents constitute the sole and entire agreement of the parties to this

21  Agreement with respect to the subject matter contained herein and therein, and supersede all prior

22  and contemporaneous understandings and agreements, both written and oral, with respect to such

23  subject matter."  (ECF No. 1 [Exhibit 2, Exhibit A, at ¶ 8.05].)  Section 5.3 of the Line of Credit

24  and Security Agreement also contained an integration clause in Paragraph 5.3, providing: "This

25  Agreement sets forth the entire agreement and understanding of the parties relating to the subject

26  matter herein and merges all prior discussions between them."  (*Id.*, Exhibit B, ¶ 5.3.)

27       Plaintiffs allege that, separate from the Agreement, KBA entered into a Line of Credit and

28  Security Agreement, pursuant to which Anvil Builders loaned $1,180,000 to KBA, securitized by

DOWNEY BRAND LLP

1  KBA's "present and future tangible and intangible property". (ECF No. 1 [Exhibit 2, ¶¶ 9 & 10,

2  Exhibit B [Line of Credit and Security Agreement]].)  The Line of Credit and Security Agreement

3  actually *obligated* Anvil Builders to file the UCC-1, stating in Paragraph 2.6: "Borrower agrees

4  that one or more financing statements pertaining to the Collateral shall be filed with the office of

5  the secretary of State of the State of California." (*Id*. [Exhibit 2, Exhibit B, ¶ 2.6].)  KBA also

6  provided Anvil Builders a promissory note, securitized by deeds of trust. (*See id*., ¶ 88.)

7      In the FAC, Plaintiffs claim that Anvil Power and Anvil Equipment breached the

8  Agreement by failing to pay for the equipment and taking possession of the equipment. (ECF No.

9  1 [Exhibit 2, ¶ 100].)  In causes of action for violation of Business & Professions Code section

10  17200 and conversion, Plaintiffs claim that the so-called "Anvil Defendants"—which term is

11  never defined in the FAC—improperly used their assets, equipment, intellectual property, and

12  millions of dollars' worth of contracts without paying for them. (*Id*., ¶ 110; see also *id*., ¶ 115

13  [alleging conversion of Plaintiffs' equipment and property, including intellectual property, such as

14  emails, telephone numbers, website, and other trade secrets].)  Finally, Plaintiffs allege that Anvil

15  Power, Anvil Equipment, and Alan Guy misrepresented that: (1) KBA's work force would be

16  hired and paid (who were allegedly terminated); and (2) the purpose of the Line of Credit and

17  Security Agreement on the basis Plaintiffs did not read and understand that this agreement

18  required the filing of a UCC-1 against KBA. (*Id*., ¶¶ 121-123, 132-133.)

19  **C.**  **Plaintiffs Remove the First Amended Complaint to this Court.**

20      On May 21, 2025, after filing the First Amended Complaint, Plaintiffs filed a Notice of

21  Removal of the First Amended Complaint pursuant to 28 U.S.C. § 1452. (ECF No. 1.)

22      **III.  STANDARD FOR MOTION TO DISMISS**

23      A motion to dismiss under Rule 12(b)(6) tests the legal sufficiency of the claims in the

24  complaint. *See N. Star Int'l v. Ariz. Corp. Comm'n*, 720 F.2d 578, 581 (9th Cir. 1983).  Dismissal

25  of the complaint or of any claim within it "can be based on the lack of a cognizable legal theory or

26  the absence of sufficient facts alleged under a cognizable legal theory." *Balistreri v. Pacifica*

27  *Police Dep't*, 901 F.2d 696, 699 (9th Cir. 1990).  "[C]onclusory allegations of law and

28  unwarranted inferences are insufficient to defeat a motion to dismiss for failure to state a claim."

*Epstein v. Wash. Energy Co.*, 83 F.3d 1136, 1140 (9th Cir. 1996) [citation omitted].

To withstand a 12(b)(6) motion, the complaint must allege "a claim for relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) [internal quotation marks omitted]. On review of a 12(b)(6) motion, a court accepts a complaint's factual allegations as true and construes the complaint in the light most favorable to the plaintiffs. *Fayer v. Vaughn*, 649 F.3d 1061, 1064 (9th Cir. 2011). But the court does not accept the truth of legal assertions cast as factual allegations or make unwarranted inferences in the plaintiffs' favor. *Id*. Nor must it accept allegations that contradict facts subject to judicial notice, *Schwarz v. United States*, 234 F.3d 428, 435 (9th Cir. 2000), or supply essential facts that were not initially pled, *Chapman v. Pier 1 Imports, Inc.*, 631 F.3d 939, 954 (9th Cir. 2011).

Further, a party may move to "strike from a pleading an insufficient defense or any redundant, immaterial, impertinent, or scandalous matter under Federal Rule of Civil Procedure 12(f). Fed. R. Civ. Proc. 12(f).

## IV. <u>STATEMENT OF ISSUES</u>

The FAC's second, third, fourth, fifth, sixth, seventh, and tenth causes of actions should be dismissed. The second cause of action for "Breach of Implied Covenant of Good Faith and Fair Dealing" is impermissibly duplicative of the breach of contract claim. The third cause of action for "Unfair Competition" is not pleaded with sufficient particularity and does not allege anything beyond a contract breach. The fourth cause of action for "Conversion" fails because it is insufficiently pleaded and also merely alleges a breach of contract since a conversion claim cannot seek damages for a purported contract breach. The fifth cause of action for "Intentional Misrepresentation – Fraud" is not pleaded with sufficient particularity and is otherwise barred by the economic loss rule. The sixth cause of action for "Negligent Misrepresentation" fails because no claim exists for "negligent" false promise (the subspecies of fraud alleged), the claim is otherwise barred by the economic loss rule, and the allegations are not pleaded with sufficient particularity. The seventh cause of action for "Conspiracy to Defraud" fails because the

1  underlying fraud claim fails, and the elements for civil conspiracy are otherwise not pleaded.  The

2  tenth cause of action for "Injunctive Relief" fails because injunctive relief is a remedy, not a claim.

3       In addition, Doe Defendants 1 through 100 should be dismissed from the FAC.

4       Finally, the FAC's claim for punitive damages should be stricken from the FAC.

5  ## V. LEGAL ARGUMENT

6  **A.**    **The Second Claim Fails to State a Claim for Breach of the Implied Covenant.**

7       The FAC's second cause of action for breach of the implied covenant fails because it is

8  duplicative of the FAC's first cause of action for breach of contract.

9       A "breach of the implied covenant of good faith and fair dealing involves something

10  beyond breach of the contractual duty itself." *Careau & Co. v. Security Pacific Business Credit,*

11  *Inc.*, 222 Cal.App.3d 1371, 1394 (1990).  As the California Supreme Court explained, "where

12  breach of an actual [contract] term is alleged, a separate implied covenant claim, based on the

13  same breach, is superfluous." *Guz v. Bechtel Nat. Inc.,* 24 Cal.4th 317, 327 (2000).

14       A long line of California cases establish that a claim for breach of the implied covenant

15  must be dismissed when the allegations "do not go beyond the statement of a mere contract breach

16  and, relying on the same alleged acts, simply seek the same damages or other relief already

17  claimed in a companion contract cause of action." *Careau*, 222 Cal.App.3d at 1395.  In such

18  circumstances, the claim for breach of the implied covenant "may be disregarded as superfluous as

19  no additional claim is actually stated." *Id*.  The Ninth Circuit follows this lines of cases in

20  dismissing duplicative, superfluous implied covenant claims. *See Total Recall Technologies v.*

21  *Luckey*, 731 Fed.Appx. 706, 707-708 (9th Cir. 2018) [affirming dismissal of implied covenant

22  claim as "based solely on the failure to perform express contractual duties, under *Careau*];

23  *Schertzer v. Bank of America, NA*, 109 F.4th 1200, 1213-1214 (9th Cir. 2024) [same]; *In re*

24  *Facebook, Inc. Internet Tracking Litigation*, 956 F.3d 589, 611 (9th Cir. 2020) [same].

25       The FAC's implied covenant cause of action does not allege any breaches beyond the

26  statement of a mere purported contract breach.  It alleges in conclusory manner: "Defendants'

27  refusal to comply with the Agreement has prevented Plaintiffs from receiving the benefits of the

28  Agreement."  (ECF No. 1 [Exhibit 2, ¶ 106].)  This cause of action therefore fails as duplicative

and superfluous.

**B.     The Third Cause of Action Fails to State a Claim for "Unfair Competition".**

The FAC's "Unfair Competition" claim arises under California Business & Professions Code sections 17200 (i.e., "UCL"; see ECF No. 1 [Exhibit 2, ¶ 109]), and is insufficiently pleaded.

The heightened pleading requirements of Rule 9(b) are applicable to UCL claims. *Kearns v. Ford Motor Co.*, 567 F.3d 1120, 1125 (9th Cir. 2009). "A plaintiff alleging unfair practices under [California Business & Professions Code sections 17200, *et seq.*] must state with reasonable particularity the facts supporting the statutory elements of the violation." *Khory v. Maly's of California, Inc.*, 14 Cal.App.4th 612, 619 (1993); see *United States, for the Use of Integrated Energy, LLC v. Siemens Gov't Techs., Inc.*, No. SACV 15-01534 JVS (DFMx), 2016 WL 11743176, at * 5 (C.D. Cal. June 13, 2016) [dismissing UCL claim for failure to sufficiently plead theory].

First, the FAC does not allege any particular section and prong of the statutory scheme that was violated and how any particular named defendants violated that section and prong. The UCL prohibits business practices that are unlawful, unfair, or fraudulent. (Cal. Bus & Prof. Code, § 17200.) To survive a Rule 12(b)(6) motion to dismiss, Plaintiffs must identify which prong or prongs of the UCL on which they are attempting to predicate liability. *Nuvo Research Inc. v. McGrath*, No. C 11-4006 SBA, 2012 WL 1965870, at *6 (N.D. Cal. May 31, 2012).

The FAC merely alleges "the aforesaid conduct constitutes unfair, unlawful, and fraudulent business practices", without specifying if its theory is premised on one or all prongs and—more specifically—which conduct falls under which particular prong. Nor are any particular sections of the UCL identified. The failure to make any distinction is important. Unlawful acts are "anything that can properly be called a business practice" and is forbidden by law. *Vestis, LLC v. Caramel Sales, Ltd.*, No. SACV182257DOCKESX, 2019 WL 3312212, at *13 (C.D. Cal. Apr. 30, 2019). Unfair acts among competitors refer to conduct that violates antitrust law. *Id*. Fraudulent acts are ones where members of the public are likely to be deceived. *Id*. Plaintiffs do not allege any actual business *practice* that transcends the parties' contractual relationship (i.e., an "unlawful" act). Plaintiffs do not allege they are a competitor (i.e., an "unfair" act). Plaintiffs do not allege that

they are consumers or members of the public (i.e., a "fraudulent" act). Because of Plaintiffs' failure to specify *how* the UCL has been violated, Defendants are not placed on adequate notice.

Further, the UCL claim does not differentiate between the conduct of the various defendants named under this claim or explain how Plaintiffs were harmed by such purported conduct. Indeed, Anvil Builders, Anvil Holdings, and Anvil Group are jumbled together along with Anvil Power and Anvil Equipment under the banner "Anvil", but the FAC never has any specific allegations (let alone of wrongful conduct) with respect to Anvil Builders, Anvil Holdings, and Anvil Group, except to allege that they are "all subsidiary and related entities". (ECF No. 1 [Exhibit 2, ¶ 35].) See *Quereshi v. Countrywide Home Loans, Inc.*, No. C09-4198 SBA, 2010 WL 841669, at *7 (N.D. Cal. Mar. 10, 2010) [dismissing UCL claim that merely alleged defendants violated the UCL "by engaging in the unlawful, unfair and fraudulent business practices alleged herein" and also failing to differentiate between the conduct of the various defendants and to explain how the plaintiff was harmed].

<u>Second</u>, the UCL claim does not purport to allege anything more than a contract breach. Paragraph 110 merely alleges that "Anvil" used "Plaintiffs' assets, equipment, IP (including business name) and millions of dollars' worth of contracts, without paying for such property and rights to build its business and to ruin Plaintiffs' business and reputation". (ECF No. 1 [Exhibit 2, ¶ 110].) The Agreement, however, allowed for the use of such assets, equipment, IP, and contracts. (*Id.*, Exhibit A [Agreement], ¶ 1.01.) Under the Agreement, tangible and intangible assets of KBA, including equipment, trademarks, goodwill, and contracts were purchased. (*Id.*) Plaintiffs cannot now sue under the UCL for conduct expressly contemplated under the Agreement. See *Shroyer v. New Cingular Wireless Servs., Inc.*, 622 F.3d 1035, 1044 (9th Cir. 2010) [dismissing UCL claim because a "common law violation such as breach of contract" is insufficient to state a claim under the UCL; the plaintiff must allege "a business practice forbidden by law, be it civil or criminal, federal, state, or municipal, statutory, regulatory, or court-made"]; see also *Nuvo Research, supra*, 2012 WL 1965870, at *6 [breach of contract claim may not form basis of UCL claim where breach is not independently unlawful, unfair, or fraudulent].

**C.** **The Fourth Cause of Action Fails to State a Claim for "Conversion".**

A breach of contract claim cannot also be the basis for a conversion claim. "The recovery of tort damages for a breach of contract is seldom permitted." *Stop Loss Ins. Brokers, Inc. v. Brown & Toland Med. Grp.*, 143 Cal.App.4th 1036, 1057-1058 (2006). "Our Supreme Court has repeatedly emphasized that contract and tort are different branches of the law, and that contract damages are generally limited to those within the contemplation of the parties when the contract was entered into or at least reasonably foreseeable by them at that time; consequential damages beyond the expectations of the parties are not recoverable." (*Id*.) "This limitation on available damages serves to encourage contractual relations and commercial activity by enabling parties to estimate in advance the financial risk of their enterprise." (*Id*.)

The FAC's "conversion" claim alleges that the named defendants took "possession of millions of dollars' worth of equipment and property…." (ECF No. 1 [Exhibit 2, ¶ 115].) This claim is a thinly veiled breach of contract claim, however. As explained above with respect to the UCL claim, the Agreement contemplated the use of such assets, equipment, IP, and contracts. (*Id*., Exhibit A [Agreement], ¶ 1.01.) Again, under the Agreement, tangible and intangible assets of KBA, including equipment, trademarks, goodwill, and contracts were purchased. (*Id*.) In fact, the FAC's "Breach of Contract" cause of action pleads the exact same breach in Paragraph 100, alleging: "Anvil has breached the Agreement by failing and refusing to pay for KBA's equipment (by keeping certain equipment and property and proposing to lease the same and by failing and refusing to make lease payments to KBA)…." (*Id*., ¶ 100.) It cannot be that the same alleged breach also gives rise to a conversion claim. See, e.g., *Voris v. Lampert*, 7 Cal.5th 1141, 1162 (2019) [rejecting conversion claim for nonpayment of wages when the availability of such claim would "transform a category of contract claims into torts, and pile additional measures of tort damages"].

Separately, again, Anvil Builders, Anvil Holdings, and Anvil Group are jumbled together along with Anvil Power and Anvil Equipment under the banner "Anvil", but the FAC never has any specific allegations (let alone of wrongful conduct) to Anvil Builders, Anvil Holdings, and Anvil Group, except to allege they are "all subsidiary and related entities". (ECF No. 1 [Exhibit 2,

MOTION TO DISMISS/STRIKE FIRST AMENDED COMPLAINT

¶ 35].)

**D.**    **The Fifth Claim Fails to State a Claim for "Fraud (Intentional Misrepresentation)".**

The FAC's intentional misrepresentation claim fails for two reasons: (1) the claim is not alleged with the requisite specificity; and (2) the claim is barred by the economic loss rule.

**1.**    **The Intentional Misrepresentation Claim Is Not Pleaded with Particularity.**

The FAC fails to allege this cause of action with the requisite specificity.  An allegation of "fraud or mistake must state with particularity the circumstances constituting fraud."  Fed R. Civ. P. 9(b).)  Under this standard, "[t]he complaint must specify such facts as the times, dates, places, benefits received, and other details of the alleged fraudulent activity."  *Neubronner v. Milken*, 6 F.3d 666, 672 (9th Cir. 1993); *Cooper v. Pickett*, 137 F.3d 616, 627 (9th Cir. 1997) [fraud allegations must be accompanied by "the who, what, when, where, and how" of the misconduct charged].  "Claims for fraud and negligent misrepresentation must meet the heightened pleading requirements of Rule 9(b)."  *Glen Holly Entertainment, Inc. v. Tektronix, Inc.*, 100 F.Supp.2d 1086, 1093 (C.D. Cal. 1999).

The essential elements of a claim for intentional misrepresentation are (1) a misrepresentation, (2) knowledge of falsity,[1] (3) intent to induce reliance, (4) actual and justifiable reliance, and (5) resulting damage.  CACI 1900.

The alleged fraud is not pleaded anywhere close to the required level of specificity.  In Paragraphs 121 through 123, the FAC pleads various representations, but does not include times, dates, places, benefits received, and other details of the alleged fraudulent activity which fails to meet the heightened pleading standard of Rule 9(b).  *Neubronner*, 6 F.3d at 672.  The FAC pleads Anvil Power, Anvil Equipment, and Alan Guy under the same banner (i.e., "Defendants"), with no effort to parcel out exactly who said what, and on whose behalf.  And, this is only the first element of a fraud claim (i.e., misrepresentation); the remaining elements in Paragraphs 126 through 130 are entirely conclusory, with little to no factual detail whatsoever.  The intentional

---

[1] For intentional misrepresentation, the statement could alternatively have been made recklessly and without regard for its truth.  *See* CACI 1900.

DOWNEY BRAND LLP

misrepresentation claim must therefore be dismissed for failure to comply with Rule 9(b).

**2.** **The Economic Loss Rule Bars the Intentional Misrepresentation Claim.**

Beyond the failure to plead the intentional misrepresentation claim under Rule 9(b), it is also barred by the economic loss rule. The California Supreme Court has provided a robust articulation of the economic loss rule in four opinions over the last four decades in: *Aas v. Superior Court*, 24 Cal.4th 627, 643 (2000); *Sheen v. Wells Fargo Bank, N.A.*, 12 Cal.5th 905, 923 (2002); *Robinson Helicopter Co., Inc.*, 34 Cal.4th 979 (2004); and *Rattagan v. Uber Technologies, Inc.*, 17 Cal.5th 1 (2024). The economic loss rule provides plaintiffs "may not ordinarily recover in tort for the breach of duties that merely restate contractual obligations." (*Aas,* 24 Cal.4th 627, 643.) Tort claims are "barred when they arise from—or are not independent of—the parties' underlying contracts." *Sheen,* 12 Cal.5th 905, 923.

An important policy purpose underlies the economic loss rule, which is to "prevent the law of contract and the law of tort from dissolving one into the other." *Robinson Helicopter*, 34 Cal.4th at 988. As explained in *Sheen*, 12 Cal.5th at 923: If parties could sue in tort for a mere breach of contract, "the significance of the contract is diminished and the doctrines that protect the integrity of the contractual process are reduced in importance. Parties wrangle over integration clauses to make clear that their obligations are the ones stated in the contract and nothing else; the point of bothering about such matters becomes unclear if a disappointed party can later invoke an outside set of obligations that are imposed on the promisor and defined by the law of tort."

*Rattagan* confirmed the economic loss rule applies to any tort claims if the plaintiff cannot "establish the elements of the claim independently of the parties' contractual rights and obligations" based on "the nature of the alleged conduct, the provisions of the contract itself, and whether the conduct exposed a party to a risk of harm neither reasonably contemplated nor allocated by the parties before entering their agreement." *Rattagan*, 17 Cal.5th at 44. While courts have recognized a limited exception to the economic loss rule when fraud causes a party to enter a contract, this limited exception does not apply when such conduct relates to a promise contained in the contract itself. *Foster Poultry Farms v. Alkar-Rapidpal-MP Equipment, Inc.*, 868 F.Supp.2d 983, 992-994 (E.D. Cal. 2012) [analyzing cases]. Stated differently, the economic loss

18

MOTION TO DISMISS/STRIKE FIRST AMENDED COMPLAINT

DOWNEY BRAND LLP

rule applies to fraud that induces execution of a contract where the plaintiff does not allege fraudulent conduct "independent from the various promises made by the parties in the course of their contractual relationship." *Id*. [citation omitted]. The rationale is: "Virtually any time a contract has been breached, the party bringing suit can allege that the breaching party never intended to meet its obligations"; to allow fraud claims under such circumstances "would collapse the carefully-guarded distinction between contract and tort law." *Id*., at 994.

Here, the intentional misrepresentation claim alleges duties that just relate to contractual obligations. This is the case for all three paragraphs of the FAC alleging misrepresentations.

First, in Paragraph 121, the FAC alleges that Anvil Power, Anvil Equipment, and Alan Guy misrepresented that: "(a) Anvil would and intended to hire Plaintiff KBA's work force, including members of the Kingsborough family; (b) that Anvil would pay such employees PTO obligations of Plaintiff KBA; (c) that the Agreement was a merger between two parties; and (d) that Defendants relied on KBA's reputation and standing in the community to perform on the Assigned Contracts." (ECF No. 1 [Exhibit 2, ¶ 121].)

The Agreement has provisions that plainly cover the employment of KBA's work force and their compensation, which relates to Paragraphs 121(a), (b), and (d) above. Section 5.02 of the Agreement, entitled "Employees", provides:

> (a)     Upon the Closing, Anvil Power and/or an Affiliate of Anvil Power shall offer employment to substantially all of Seller's employees for substantially the same pay, benefits and positions. Seller shall cooperate with Anvil Power's recruitment of Seller's employees.

> (b)     After the Closing, neither Anvil Power nor any Affiliate shall terminate 50 or more employees or change their compensation, benefits (including retirement plans, health insurance, vacation and sick days), level of seniority, working conditions or job responsibilities within thirty (30) days after Closing."

(*See id*. [Exhibit A, ¶ 5.02].)

As for Paragraph 121(c), the Agreement is self-evident as to whether it is a "merger" or something else. Indeed, the title of the Agreement—"Asset Purchase Agreement"—itself is clear what the Agreement accomplishes, and it recites the parties' obligations. (ECF No. 1 [Exhibit 2, Exhibit A].)

Second, in Paragraph 122, the FAC alleges that Anvil Power, Anvil Equipment, and Alan Guy misrepresented that "Anvil would pay certain employment expenses incurred by KBA in advance of the Agreement" and "account for such expenses as a loan to KBA (described as a line of credit)", secured with deeds of trust. (ECF No. 1 [Exhibit 2, ¶ 122].) Once again, this merely restates contractual obligations. Specifically, Anvil Builders obtained a promissory note from KBA, securitized by deeds of trust. (*See id.*, ¶ 88.)

Third, in Paragraph 123, the FAC alleges that Richard Leider and Alan Guy misrepresented the purpose of the Line of Credit and Security Agreement (attached as Exhibit B to the FAC) because a UCC-1 was filed "against KBA before there was an agreement to do so." (ECF No. 1 [Exhibit 2, ¶ 123].) But the Line of Credit and Security Agreement actually *obligated* Anvil Builders to file the UCC-1, stating in Paragraph 2.6: "Borrower agrees that one or more financing statements pertaining to the Collateral shall be filed with the office of the secretary of State of the State of California." (*Id.* [Exhibit 2, Exhibit B, ¶ 2.6].) Further, the FAC alleges, "KBA and its principals did not understand that KBA was giving Anvil rights to foreclose and seize the equipment Anvil had agreed to purchase." (*Id.*, ¶ 123.) Ignorance of the legal implications of a contract that KBA signed is not justification to sue another party for fraud. *Security First Nat. Trust & Sav. Bank v. Loftus*, 129 Cal.App. 650, 654-655 (1933) [party who claims it did not read or understand the contract cannot escape liability].

In addition, to the extent Plaintiffs claim that its understanding somehow differed from what was contractually agreed upon, the Agreement contained an integration clause in Paragraph 8.05, providing: "This Agreement and the other Transaction Documents constitute the sole and entire agreement of the parties to this Agreement with respect to the subject matter contained herein and therein, and supersede all prior and contemporaneous understandings and agreements, both written and oral, with respect to such subject matter." (ECF No. 1 [Exhibit 2, Exhibit A, ¶ 8.05].) Section 5.3 of the Line of Credit and Security Agreement also contained an integration clause in Paragraph 5.3, providing: "This Agreement sets forth the entire agreement and understanding of the parties relating to the subject matter herein and merges all prior discussions between them." (*Id.*, Exhibit B, ¶ 5.3.)

Because the claimed fraudulent misrepresentations are plainly not independent of the parties' contractual rights and obligations, the intentional misrepresentation cause of action is barred by the economic loss rule.

### E. The Sixth Cause of Action Fails to State a Claim for "Negligent Misrepresentation".

The FAC's sixth cause of action for "Negligent Misrepresentation" fails on three grounds: (1) no claim exists for "negligent" false promise; (2) this claim is otherwise barred by the economic loss rule; and (3) this claim is not pleaded with the requisite specificity.

#### 1. The Negligent Misrepresentation Claim Is Not Pleaded with Particularity.

This cause of action is defective for lack of pleading negligent misrepresentation for the same reason that the intentional misrepresentation claim is insufficiently pleaded. The essential elements for negligent misrepresentation are the same as for intentional misrepresentation, except instead of knowledge of falsity, the defendant need only have honestly believed the representation was true but had no reasonable grounds for believing the representation was true. CACI 1903. As discussed above, negligent misrepresentation claims must also meet the heightened pleading requirements of Rule 9(b). *Glen Holly Entertainment, supra*, 100 F.Supp.2d at 1093. Because the negligent misrepresentation claim fails to comply with Rule 9(b) for the same reasons the intentional misrepresentation claim was insufficient, this cause of action must be dismissed. See *U.S. Concord, Inc. v. Harris Graphics Corp*., 757 F. Supp. 1053, 1058 (N.D. Cal. 1991) [negligent misrepresentation failed for lack of specificity under Rule 9(b)].

#### 2. The Economic Loss Rule Bars the Negligent Misrepresentation Claim.

This claim is barred under the economic loss rule for the same reason the intentional misrepresentation claim is barred. The economic loss rule is routinely applied to negligent misrepresentation claims. See *Crystal Springs Upload Sch. v. Fieldturf USA, Inc.*, 219 F.Supp.3d 962, 968 (N.D. Cal. 2016) [negligent misrepresentation claim barred by economic loss rule].

The FAC's intentional misrepresentation claim is barred for another reason under the economic loss rule. That rule imposes an <u>additional</u> requirement for negligence-based torts: "tort recovery for negligently inflicted economic losses" is unrecoverable if "unaccompanied by physical or property damages under the limits recognized in *Sheen*." *Rattagan*, 17 Cal.5th at 38;

MOTION TO DISMISS/STRIKE FIRST AMENDED COMPLAINT

DOWNEY BRAND LLP

*Sheen*, 12 Cal.5th at 922. Here, nowhere does the negligent misrepresentation claim allege "physical or property damages", notwithstanding it is a *requirement*. See *Astrium S.A.S. v. TRW, Inc.*, 197 F.App'x 575, 577 (9th Cir. 2006) [holding negligent misrepresentation claim barred under economic loss rule since "there is no showing that people or property were placed at risk"].)

**3.    There Is No Cause of Action for "Negligent" False Promise.**

The FAC's sixth claim is entitled "Negligent Misrepresentation", but this is not an appropriate label. The allegations under the label for a cause of action determine what claim is pleaded. *Rains v. Criterion Sys.*, 80 F.3d 339, 343, fn. 2 (9th Cir. 1996) [label plaintiff attaches to cause of action is not dispositive; court must examine factual allegations to determine nature of claim]. In *Trans World International, Inc. v. Weiss/Watson, Inc.*, Nos. 97-56254, 97-56363, 1999 WL 1211641 (Dec. 16, 1999, 9th Cir.), for example, the claim for negligent misrepresentation was dismissed because it was based on a promise of future conduct, and "a promise of future conduct is actionable only if the promise was made with no intention to perform". See also *Meineke Franchisor SPV LLC v. CJGL, Inc.*, 205 F.3d 1352 (9th Cir. 2024) [negligent misrepresentation claim dismissed "because false promises are not actionable under negligent misrepresentation].

While the sixth cause of action is styled "Negligent Misrepresentation", the allegations under that claim in fact attempt to plead a claim of "false promise"—a subspecies of fraud. A cause of action for false promise requires that the following elements be alleged: (1) defendant made a promise to plaintiff; (2) defendant did not intend to perform this promise when it made it; (3) defendant intended that plaintiff rely on this promise; (4) plaintiff reasonably relied on defendant's promise; (5) defendant did not perform this promised act; (6) plaintiff was harmed; and (7) plaintiff's reliance on defendant's promise was a substantial factor in cause its harm. (CACI 1902.) Here, the FAC alleges that various alleged misrepresentations were made and that "[t]he Defendants and Alan Guy never intended to perform according to the terms of the Agreement…." (ECF No. 1 [Exhibit 2, at ¶ 134].)

No cause of action for "negligent" false promise exists, however. A cause of action for "false promise" requires intentionality. See CACI 1902 [requiring proof that defendant "did not intend to perform this promise"]. An honest but reasonable intention to perform is not a false

DOWNEY BRAND LLP

1  promise, and a false promise made without any intention to perform is an intentional act, not a

2  negligent one. *Tarmann v. State Farm Mut. Auto. Ins. Co.*, 2 Cal.App.4th 153, 159 (1991). There

3  is therefore no cause of action for negligent false promise. It is perhaps for this reason that the

4  FAC's cause of action for "Negligent Misrepresentation" does not even allege negligent conduct,

5  but instead alleges that the named defendants "knew that the representations were false" and

6  "never intended to perform" under the Agreement. (ECF No. 1 [Exhibit 2, ¶ 134].)

7       The "Negligent Misrepresentation" must therefore be dismissed.

8  **F.   The Seventh Cause of Action Fails to State a Claim for "Conspiracy to Defraud".**

9       The FAC's seventh cause of action for "Conspiracy to Defraud" fails on two grounds: (1)

10  the underlying fraud claim fails; and (2) the elements for civil conspiracy are not pleaded.

11       **1.   The Cause of Action Fails Because the Underlying Fraud Claim Fails.**

12       It is hornbook law that if the underlying claim on which a conspiracy cause of action is

13  based fails, the conspiracy claim must also be dismissed. *Willis v. City of L.A.*, 57 Fed.Appx. 283,

14  287 (9th Cir. 2002) [where no tort alleged, defendants not liable for civil conspiracy as a matter of

15  law]; see also *Applied Equip. Corp. v. Litton Saudi Arabia Ltd.*, 7 Cal.4th 503, 511 (1994)

16  [Standing alone, a conspiracy does no harm and engenders no tort liability. It must be activated by

17  the commission of an actual tort."].

18       The FAC's conspiracy to defraud claim is based on the FAC's fraudulent conduct alleged.

19  (*See* ECF No. 1 [Exhibit 2, ¶ 142] ["Defendants' aforesaid conduct constitutes conspiracy to harm

20  and defraud Plaintiffs."].) The only specificity pleaded is with respect to "the use of a LOC, UCC-

21  1, and deeds of trust", which is only alleged in Paragraph 123 of the intentional misrepresentation

22  claim (and not the negligent misrepresentation claim). (*Id.*) Because the FAC's underlying fraud

23  claim fails for the reasons discussed above, the conspiracy cause of action must also be dismissed.

24       **2.   The Elements for Civil Conspiracy Are Not Sufficiently Pleaded.**

25       "A conspiracy is not an independent cause of action, but a legal doctrine that imposes

26  liability on persons who, although no actually committing a tort themselves, share with the

27  immediate tortfeasors a common plan or design in its perpetration. By participating in a civil

28  conspiracy, a coconspirator effectively adopts as his or her own the torts of other coconspirators

within the ambit of the conspiracy. Liability for civil conspiracy generally requires three elements: (1) formation of a conspiracy (an agreement to commit wrongful acts); (2) operation of a conspiracy (commission of the wrongful acts); and (3) damage resulting from operation of a conspiracy." *Mangindin v. Washington Mut. Bank*, 637 F.Supp.2d 700, 708 (N.D. Cal. 2009) [internal quotations and citations omitted].

Here, the FAC does not allege (let alone sufficiently) the first and second elements for civil conspiracy. No formation of a conspiracy is alleged. No operation of a conspiracy is alleged. The FAC merely alleged, in conclusory fashion: "Defendants' aforesaid conduct constitutes conspiracy to harm and defraud Plaintiffs." The only specifics are "the use of a LOC, UCC-1, and deeds of trust". But, as explained above, there is no explanation for how such alleged conduct can be labeled "fraudulent", let alone part of a civil conspiracy. Because the FAC failed to allege (at all) the first two elements of civil conspiracy, the seventh cause of action must be dismissed.

**G.      The Tenth Cause of Action Fails to State a Claim for "Injunctive Relief".**

The FAC's tenth cause of action for "Injunctive Relief" fails because it is well-established that injunctive relief is a remedy, not a cause of action. (*Nardico v. J P Morgan Chase and Co.*, No. C 12-4891 PJH, 2013 WL 144096 (N.D. Cal. Jan. 11, 2013) ["injunctive relief is a remedy, not a cause of action in federal court"].) This cause of action therefore fails to state a claim.

**H.      Plaintiffs Have Failed to State a Claim Against the Doe Defendants.**

"The use of 'John Doe' to identify a defendant is not favored in the Ninth Circuit." *Guzman v. Dorsey*, No. 19-cv-03757-HSG, 2021 WL 84476, at *3 (N.D. Cal. Jan. 11, 2021) [citing *Gillespie v. Civiletti*, 629 F.2d 637, 642 (9th Cir. 1980). Simply put, "[t]here is no provision in the Federal Statutes or Federal Rules of Civil Procedure for use of fictitious parties." *Fifty Associates v. Prudential Ins. Co. of America*, 446 F.2d 1187 (9th Cir. 1970); *M.J. Brock & Sons, Inc. v. City of Davis*, 401 F.Supp. 354, 357 (N.D. Cal. 1975) ["'John Doe' defendants are not cognizable in federal courts."]. Thus, the "general practice is to dismiss the Doe defendants without prejudice." *Guzman*, supra, 2021 WL 84476 at *3.

"[A]bsent specific allegations describing each Defendant's specific role in the alleged violations, a plaintiff fails to state a claim against any defendant." *Garcia v. Bryant*, No. CV-F-

24
MOTION TO DISMISS/STRIKE FIRST AMENDED COMPLAINT

11-1566-LJO, 2011 WL 5241177, at *7 (E.D. Cal. Oct. 31, 2011) [dismissing Doe Defendants for failure to state a claim because plaintiff "failed to show how the Doe Defendants participated in the alleged violations]. Additionally, courts generally require that the plaintiff provide "the reasons why he is unable to obtain [the Doe defendants' names]." *See, e.g., Lee v. Plummer*, No. C-0402636 VRW, 2005 WL 91380, at *6 (N.D. Cal. Jan. 17, 20025).

Courts within the Ninth Circuit routinely dismiss claims against Doe defendants, particularly where there is at least one known defendant. *See, e.g., M.J. Brock & Sons*, *supra*, 401 F. Supp. at 357; *Brockman v. Cnty. of San Diego*, No. 11-CV-05120GPC-BLM, 2022 WL 15524598, at *4 (S.D. Cal. Oct. 27, 2022); *see also Santos v. Potter*, No. C-06-2948-VRW, 2007 WL 926493, at **2-3 (N.D. Cal. Mar. 26, 2007) [denying plaintiff's motion to add Doe defendants because Doe defendants "have no place in a complaint unless plaintiff provides the court with more identifying information regarding such defendants"].

Here, the FAC names <u>100</u> Doe Defendants as defendants and has failed to plausibly state a claim against them. The FAC offers no specific description for these "Doe Defendants;" Plaintiffs merely allege that they "were and are the agents, servants, representatives, and/or employees of each of the other Defendants herein and were at all times acting within the course and scope of such agency, representation and employment, and with the permission and consent of each of said Defendants." (ECF No. 1 [Exhibit 2, ¶ 25; see also *id*., ¶ 26, alleging Doe Defendants were "acting in concert with, and/or in conspiracy with, each and every one of the remaining Defendants"].) The FAC's description of the Doe Defendants is just boilerplate language.

Nor does the FAC allege any specific actions taken by any of these Doe Defendants, much less describe their "specific role[s] in the alleged violations." *See Bryant*, *supra*, 2011 WL 5241177 at *8. The FAC therefore has failed to show how the Doe Defendants participated in the alleged violations, and the Doe Defendants should be dismissed. *Id*. at *7. Further, the FAC does not allege why Plaintiffs do not know the names of these Doe Defendants.

## I. **The Court Should Strike Plaintiffs' Request for Punitive Damages.**

The FAC's fourth cause of action (for conversion) and fifth cause of action (for intentional misrepresentation) request punitive damages. (ECF No. 1 [Exhibit 2, ¶¶ 119 & 130; *see also id*.,

1 Prayer at ¶ 2, praying "[f]or punitive and exemplary damages in an amount to be proven at

2 trial."].) This claim for punitive damages—in Paragraphs 119, 130, and Paragraph 2 of the

3 Prayer—should be stricken from the First Amended Complaint.

4      A motion to strike may be used to remove an improper request for damages, including

5 punitive damages, when such requested relief is unavailable as a matter of law. *Wells v. Bd of*

6 *Trustees of the Cal. State Univ.*, 393 F. Supp. 2d 990, 998 (N.D. Cal. 2005). In addition, "motions

7 to strike requests for certain types of relief, such as punitive and compensatory damages, are

8 generally granted if such relief is not recoverable under applicable law." *Henrikson v. Turbomeca*,

9 No. CV.S 06 1563, 2006 WL 3929541, at *2 (E.D. Cal. 2006) (citation omitted).

10      The FAC does not provide any legal basis for punitive damages. In Paragraphs 119 and

11 130, it seeks punitive damages under California Civil Code section 3294, but there are no

12 allegations of any facts evidencing oppression, fraud, or malice. *See* Cal. Civ. Code, § 3294, subd.

13 (a) [permitting punitive damages upon "clear and convincing evidence" that a defendant is guilty

14 of "oppression, fraud, or malice"]. In Paragraphs 119 and 130, Plaintiffs vaguely claim that

15 "Defendants' knowing and intentional misrepresentations of the facts was oppressive, fraudulent,

16 and malicious", but nowhere do Plaintiffs explain what purported "oppressive", "fraudulent", and

17 "malicious" conduct was actually committed. Nothing rises to the level of "oppressive",

18 "fraudulent", and "malicious" conduct. Without more, Plaintiffs' request for punitive damages

19 should be stricken. *See Lavine v. Jessup*, 161 Cal.App.2d 59, 69 (1958) [finding conclusory

20 allegations of fraud, bad faith, oppression, and malice insufficient].

## VI.    LEAVE TO AMEND SHOULD BE DENIED

22      Leave to amend should be denied when the district court "determines that the pleading

23 could not possibly be cured by the allegation of other facts." *Cook, Perkiss Liehe v. N. Cal.*

24 *Collection Service*, 911 F.2d 242, 247 (9th Cir. 1990). That is precisely the case here. The cause

25 of action for Breach of the Implied Covenant of Good Faith and Fair Dealing cannot be remedied

26 because it expressly repeats the Breach of Contract cause of action. Nor can the fraud, conspiracy,

27 UCL, and conversion claims be remedied because they are barred as a matter of law by the

28 economic loss rule. Finally the injunctive relief cause of action is categorically impermissible.

## VII. CONCLUSION

For the foregoing reasons, Defendants respectfully request that the Court: (1) dismiss the First Amended Complaint's second, third, fourth, fifth, sixth, seventh, and tenth causes of actions with prejudice, as well as the 100 Doe Defendants; and (2) strike the FAC's request for punitive damages.

DATED: June 30, 2025     DOWNEY BRAND LLP


         By:   /s/ Sean J. Filippini
            SEAN J. FILIPPINI
          Attorneys for ANVIL POWER, INC., ANVIL
          EQUIPMENT COMPANY LP, ANVIL
          BUILDERS, ANVIL HOLDINGS, INC., ANVIL
          GROUP, LLC, ALAN GUY, and RICHARD J.
               LEIDER

DOWNEY BRAND LLP